# Fidelity & Columbia Trust Co. et al. v. Cornett et al.

March 24, 1939.

James M. Gilbert, Judge.

LAFON ALLEN and OLDHAM CLARKE for appellants.

GOLDEN & LAY and TUGGLE & TUGGLE for appellees.

OPINION OF THE COURT BY JUDGE STITES—Reversing.

This is an appeal from a judgment of the Bell Circuit Court undertaking to declare the rights of the parties concerned under the will of Robert N. Cornett, deceased. The will of Mr. Cornett was admitted to probate in January, 1935. He provided by the first clause of his will for the payment of his debts and funeral expenses. By the second clause, he made various specific bequests amounting in the aggregate to $2,500, and bequeathed the remainder of his personal property to his widow. We are concerned here with the construction to be placed on the third clause of the will, providing:

"3rd. I give, bequeath, and devise to the Fidelity and Columbia Trust Company, of Louisville, Kentucky, and to its successors, in trust, all my coal lands located in Harlan County, Kentucky, including the rents and royalties therefrom, for the follow uses and purposes, to-wit: To hold and manage the same and after the payment of all taxes and

charges against said land, the rents and royalties therefrom to be used and applied as follow: First, I desire that the sum of Two Thousand Dollars shall be paid to my said wife, Florence Cornett, annually, so long as she lives and remains unmarried, such payments to be made quarterly or as she shall desire. Second, after such annual payments or accumulations therefor from said royalties, to my said wife, it is my will and desire that the sum of Five Thousand Dollars be accumulated from same source and be set apart for a monument to be erected over the graves of myself and my said beloved wife. Third, after the payments or accumulation of sufficient funds from the said royalties to make the said annual payments to my wife and to erect the said monument, it is my will and desire that an endowment fund to the amount of Ten Thousand Dollars be accumulated and created for the Union College of Barbourville, Kentucky, the interest of which shall be used for the purpose of educating students preparing for the Methodist ministry. After the discharge of the three foregoing specific bequests from the rents and royalties from such coal lands, the rents and royalties to arise thereafter shall go to my sisters and brothers and their children under the terms of the succeeding and fourth clause of this will.''

Sometime after the probate of the will, the parties in interest entered into an agreement increasing the annuity to the widow from $2,000 to $2,400 and providing that the erection of the monument should not be postponed until the widow's death but should take place at once at the reduced cost of $2,000—the saving of $3,000 to be paid to the widow immediately. This agreement is alleged to have been made in consideration of Mrs. Cornett's promise not to renounce her husband's will. It was carried into a judgment based on the ex parte petition of the persons interested.

Prior to the appointment and qualification of the appellant, Fidelity and Columbia Trust Company, as trustee, Mrs. Cornett, as executrix, received the rents and royalties accruing from the coal lands mentioned in Clause Three of the Will. On December 17, 1936, she paid a balance of $6,659.69 over to the trustee and it reimbursed her for the cost of the monument and paid her the $3,000 in accordance with the judgment entered

on the ex parte petition. Since that time, the trustee has held the coal lands and has received a total of $27,043.74 and has disbursed $12,718.60, leaving a balance of accumulated income in its hands of $14,325.14. It appears that the rents and royalties accruing from the lands vary considerably from year to year, and it likewise appears that the amount of recoverable coal remaining in the property, while open to estimate, is nevertheless uncertain as to quantity and as to expense of recovery.

The only serious controversy is whether or not the appellant trustee should retain the surplus income now accruing from the coal for the security of future annual payments to Mrs. Cornett. Appellees, who are Union College and various collateral kinsmen of the testator alleged to be beneficiaries under the Fourth clause of the will, contend that the whole surplus income should be distributed at the end of each year. Appellants insist that the surplus income should be accumulated from year to year for the protection of Mrs. Cornett and that appellees must wait until Mrs. Cornett's remarriage or death before there can be a final distribution. The intention of the testator as expressed in his will must, of course, be the guide for our disposition of the question.

It is apparent that the testator intended that the provision for an annuity to his widow should be a first charge against the trust after the payments of taxes and charges against the land. He directs the trustee to devote the net income "first" to the payment of the annuity to his widow. Secondly, he provides "after such annual payments *or accumulations*" that the sum of $5,000 "be accumulated" for a monument over the graves of him and his wife. Finally he provides: "Third, after the payments *or accumulation* of sufficient funds" for the above purposes, that an endowment fund of $10,000 "be accumulated" for Union College. He then provides that "after the discharge of the three foregoing specific bequests from the rents and royalties from such coal lands, the rents and royalties to arise thereafter shall go to my sisters and brothers and their children under the terms of the succeeding and fourth clause of the will."

The provision for the monument and the gift to Union College are each to be taken from the *accumulation* of income, but the payments are each postponed

until the duty to pay the annuity to Mrs. Cornett, so long as she lives and remains unmarried, has been fully discharged. Thus, in the case of the accumulation for a monument, testator said that it should be made for that purpose "*after* such annual payments *or accumulations therefor* from said royalties to my said wife." In the case of the accumulation for the benefit of Union College, he said that it should be made for that purpose "after the payments *or accumulation* of sufficient funds from the said royalties to make the said annual payments to my wife and to erect the said monument," etc. And when he came finally to the provision for his collateral kindred, he said that, "*after the discharge of the three foregoing specific bequests* from the rents and royalties from such coal lands," they should receive "the rents and royalties to *arise thereafter.*" The net income from the trust property and the accumulations thereof were, "*first,*" to be devoted to payment of her annuity "*so long as she lives* and remains unmarried." He evidently used the words "First," "Second" and "Third," to indicate the chronological order in which his purposes were to be carried out. "*First,*" the income *and its accumulations* were to be held and used to pay the annuity to his widow so long as she lived. "*Second,*" after the fulfillment of that purpose, surplus accumulations were to be expended for a monument to be erected over the graves of himself and his wife, a direction which could not be carried out literally until after her death. "*Third,*" after the consummation of the first two purposes, accumulations were to be used to create the fund for Union College but this legacy was not to be paid until the funds in the hands of the Trustee after his wife's death were "sufficient" to erect a monument "over the graves" of testator and his widow.

It will be noted that when the testator comes to consider the gift to Union College he provides that "after the payment or accumulation of *sufficient* funds from said royalties to make the annual payments to my wife and to erect the said monument, it is my will and desire that an endowment fund to the amount of $10.000.00 be accumulated and created for the Union College." Clearly, the testator here used the word "sufficient" with reference not only to the monument but also to the annual payments to his widow. It is quite evident that he had in mind the accumulation of

more than one year's income, for he speaks of "annual payments" and not merely of an "annual payment." Obviously, the uncertainty of future income from the trust property and the uncertainty of the duration of the widow's life must have been in the testator's mind, and it was only after a "sufficient" sum should be accumulated for these purposes that there should be any question of other benefactions.

When we come to the other appellees it is obvious that their interest was "to arise" after "the discharge" of the three specific bequests. Certainly, the obligation of the trust could not be discharged otherwise than by the payment of the annuity to Mrs. Cornett during her life or widowhood. These payments can be assured only by the accumulation of such surplus income as may accrue from year to year and appellees have no interest therein until Mrs. Cornett dies or remarries. On the death or remarriage of Mrs. Cornett, and not until then, the trust terminates, and at that time, appellees will be entitled to the beneficial enjoyment of the property.

Appellees insist that the agreed judgment, mentioned above, entered upon the ex parte petition of the parties in interest, estops Mrs. Cornett from insisting upon a construction of the will requiring accumulations of income during her lifetime. The short answer to this contention is, of course, that the agreed judgment did not undertake to modify the will in this particular or to regulate the administration of the trust in accordance with the will. Neither the agreed judgment nor the contracts on which it is alleged to be based are in the record before us and there is no plea of an estoppel. It is thus plain that there is no occasion for us to consider this question further even if there were some visible merit in it

Judgment reversed.